UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Chrissy D. Shaw,
    Claimant

    v.                               Case No. 11-cv-141-SM
                                       Opinion No. 2011 DNH 213

Michael J. Astrue, Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Claimant, Chrissy Shaw, moves to reverse the Commissioner's decision denying her application for Social Security Disability Insurance benefits under Title II of the Social Security Act and Supplemental Security Income benefits under Title XVI of the Act. See 42 U.S.C. §§ 423, 1381 et seq. The Commissioner objects and moves for an order affirming his decision.

**Factual Background**

I.    Procedural History

On November 10, 2008, claimant filed an application for Social Security Disability Insurance benefits ("DIB benefits") and on November 25, 2008, filed an application for Supplemental Security Income benefits ("SSI benefits"). In both applications she alleged that she had been unable to work since November 26,

2005.  She asserted eligibility for benefits based on
disabilities due to problems with her cervical spine, bipolar
disorder, arthritis, anxiety, and depression.  Her applications
for benefits were denied and she requested an administrative
hearing before an Administrative Law Judge ("ALJ").

On August 9, 2010, claimant, her attorney, and an impartial
vocational expert appeared before an ALJ.  On October 20, 2010,
the ALJ issued his written decision, concluding that claimant was
not disabled.  The Decision Review Board selected the ALJ's
decision for review, but did not complete its review within the
time allowed.  Accordingly, the ALJ's decision became the final
decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing
the denial of DIB and SSI benefits.  Now pending are claimant's
"Motion for Order Reversing Decision of the Commissioner"
(document no. 11) and the Commissioner's "Motion for Order
Affirming the Decision of the Commissioner" (document no. 15).

II.  Stipulated Facts

Pursuant to Local Rule 9.1(d), the parties submitted a Joint
Statement of Material Facts which, because it is part of the
court record (document no. 16), need not be recounted in detail

2

here.  Facts relevant to the decision will be discussed as
appropriate.


**Standard of Review**

I.   Properly Supported Findings by the ALJ are
     Entitled to Deference

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings of the Commissioner are
conclusive if supported by substantial evidence.[1]  See 42 U.S.C.
§§ 405(g); Irlanda Ortiz v. Secretary of Health & Human Services,
955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's
findings are supported by substantial evidence, the court must
sustain those findings even when there may also be substantial
evidence supporting the contrary position.  See Tsarelka v.
Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir.
1988) ("[W]e must uphold the [Commissioner's] conclusion, even if
the record arguably could justify a different conclusion, so long

---

[1] Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is
something less than the weight of the evidence, and the
possibility of drawing two inconsistent conclusions from the
evidence does not prevent an administrative agency's finding from
being supported by substantial evidence.  Consolo v. Federal
Maritime Comm'n., 383 U.S. 607, 620 (1966).

as it is supported by substantial evidence."). See also
Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218,
222 (1st Cir. 1981) ("We must uphold the [Commissioner's]
findings in this case if a reasonable mind, reviewing the
evidence in the record as a whole, could accept it as adequate to
support his conclusion.").

In making factual findings, the Commissioner must weigh and
resolve conflicts in the evidence. See Burgos Lopez v. Secretary
of Health & Human Services, 747 F.2d 37, 40 (1st Cir. 1984)
(citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It
is "the responsibility of the [Commissioner] to determine issues
of credibility and to draw inferences from the record evidence.
Indeed, the resolution of conflicts in the evidence is for the
[Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769
(citation omitted). Accordingly, the court will give deference
to the ALJ's credibility determinations, particularly when those
determinations are supported by specific findings. See
Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192,
195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health &
Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, claimant must prove that her impairment prevents her from performing her former type of work. See <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health & Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, claimant is not required to establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D.Mass. 1982).

If claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See <u>Vazquez v. Secretary of Health & Human Services</u>,

683 F.2d 1, 2 (1st Cir. 1982).  <u>See also</u> 20 C.F.R. §§
404.1512(g).  If the Commissioner shows the existence of other
jobs that claimant can perform, then the overall burden to
demonstrate disability remains with claimant.  <u>See</u> <u>Hernandez v.</u>
<u>Weinberger</u>, 493 F.2d 1120, 1123 (1st Cir. 1974); <u>Benko v.</u>
<u>Schweiker</u>, 551 F. Supp. 698, 701 (D.N.H. 1982).


     In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) claimant's subjective claims of pain and
disability, as supported by the testimony of claimant or other
witnesses; and (3) claimant's educational background, age, and
work experience.  <u>See, e.g.</u>, <u>Avery v. Secretary of Health & Human</u>
<u>Services</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote</u>, 690 F.2d
at 6.  When determining whether a claimant is disabled, the ALJ
is also required to make the following five inquiries:

     (1)   whether claimant is engaged in substantial
           gainful activity;

     (2)   whether claimant has a severe impairment;

     (3)   whether the impairment meets or equals a
           listed impairment;

     (4)   whether the impairment prevents claimant from
           performing past relevant work; and

     (5)   whether the impairment prevents claimant from
           doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I.   <u>Background - The ALJ's Findings</u>

The ALJ concluded that Shaw was not disabled from November 15, 2007, through the date of his decision.  In reaching his decision, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520. He first determined that Shaw had not been engaged in substantial gainful employment since her alleged onset of disability.  Next, he concluded that Shaw has the severe impairment of degenerative disc disease.  Administrative Record ("Admin. Rec.") 14.

7

Nevertheless, the ALJ determined that the impairment did not meet
or equal one of the impairments listed in Part 404, Subpart P,
Appendix 1.  Admin. Rec. 15.

Next, the ALJ concluded that Shaw retained the residual
functional capacity to perform the full range of light work,
allowing for performing the postural functions occasionally.
Admin. Rec. 16.  The ALJ concluded, therefore, that Shaw is
capable of performing her past relevant jobs as a child care
worker, assembler, hand packager, counter attendant, icer, and
companion for the elderly.  Admin. Rec. 17.

Consequently, the ALJ concluded that Shaw was not
"disabled," as that term is defined in the Act, through the date
of his decision.  Admin. Rec. 17.  Shaw, therefore, was deemed
ineligible for DIB and SSI benefits.

II.  Claimant's Challenges to the ALJ's Decision

Shaw moves to reverse the Commissioner's decision, arguing
that the ALJ erred by failing to find that her bipolar disorder
was a serious impairment at Step 2 of the sequential analysis and
also erred by failing to properly evaluate her subjective mental
and physical symptoms.  The Commissioner responds that because
the ALJ found a severe physical impairment at Step 2 no error

occurred and that the ALJ properly assessed Shaw's subjective
complaints.

    A.  Step 2

    Claimant alleges the ALJ erred at Step 2 in finding that her
mental impairment was not severe.  "It is well established in
this circuit 'that the Step 2 severity requirement is . . . to be
a de minimus policy, designed to do no more than screen out
groundless claims.'"  Mohammad v. Astrue, No. 10-cv-254-JL, 2011
WL 1706116, at *7 (D.N.H. April 4, 2011) (quoting McDonald v.
Secretary of Health & Human Services, 795 F.2d 1118, 1124 (1st
Cir. 1986).  Here, the ALJ found that claimant had a "medically
determinable mental impairment of bipolar disorder."  Admin. Rec.
14.  He concluded, however, that the impairment was "non-severe."
Id.  In particular, he found that claimant's mental impairment
caused "mild limitation" in the relevant functional areas: daily
living, social functioning, and concentration, persistence or
pace.  Id.  Although the ALJ's Step 2 discussion of claimant's
mental impairment is detailed and thorough, he erred in finding
that claimant had not met the de minimus showing.  Claimant's
medical records disclose that she was being treated (including
with medications) for bipolar disorder, anxiety, and depression,
and was hospitalized in 2009 for suicidal ideation.  See
Mohammad, 2011 WL 1706116, at *7 (de minimus burden at Step 2 was

met where claimant "was diagnosed . . . as having a seizure disorder" and where "he was prescribed multiple anticonvulsant medications.").

But even accepting that the ALJ erred at Step 2, that error is harmless if: the ALJ found at least one severe impairment, <u>Syms v. Astrue</u>, Civil No. 10-cv-499-JD, 2011 WL 4017870, at * 1 (D.N.H. Sept. 8, 2011); the ALJ then "continued through the remaining steps," <u>id</u>.; and the evidence does not "demonstrate how the error would . . . change the outcome of the . . . case." <u>Bard v. Astrue</u>, No. 1:10-cv-220-JAW, 2011 WL 2559534, at *5 (D.Me. June 27, 2011) (quotation omitted).  Here, the ALJ at Step 2 found that Shaw suffered from the severe physical impairment of degenerative disc disease.  He then continued to proceed through all remaining steps.  In order for Shaw to prevail on her Step 2 argument, therefore, she must "point[…] to . . . evidence that" the alleged Step 2 error relating to her mental impairment is "outcome determinative."  <u>Bard</u>, 2011 WL 2559534, at *5.

Although the ALJ did not discuss Shaw's mental impairment in his RFC determination, he did pose two hypotheticals to the VE which included mental limitations.  The VE's testimony in response to those hypotheticals reveals that the ALJ's Step 2 error is outcome determinative <u>only</u> if Shaw's mental impairment

10

in fact caused "marked" limitations.  <u>Compare</u> <u>McCaffrey v.</u>
<u>Astrue</u>, Civil Action No. 10-cv-01943-PAB, 2011 WL 4536980, at *12
(D.Colo. Sept. 30, 2011) (error at Step 2 not harmless where ALJ
failed to pose hypothetical to VE which included mental
limitations).  The VE testified that "marked [mental]
impairment[s]" would preclude a person from performing "any
jobs."  Admin. Rec. 49-50.  She also testified, however, that a
person with even "moderate [mental] impairments," in combination
with claimant's physical limitations, would still be able to do
the jobs the ALJ found Shaw could do.  <u>Id</u>. at 49.

The critical question, then, is whether substantial evidence
in the record supports the ALJ's determination that Shaw's mental
impairment resulted in less than "marked" limitations.  In
arguing that it does not, Shaw implicitly, and primarily,
challenges the ALJ's assessment of her subjective complaints
regarding her mental limitations.[2]

B.  Subjective Complaints

When a claimant demonstrates that her impairment could
reasonably be expected to produce the symptoms she alleges, the

---

2 Shaw's brief does not explicitly state that she is challenging
the ALJ's determination that her subjective complaints about
mental limitations are not wholly credible.  But because that
argument is implicit in Shaw's overarching argument about the
severity of her mental impairment, the court will address it.

ALJ is required to determine the intensity, persistence, and limiting effects of those symptoms.  20 C.F.R. § 404.1529(c).  In making that determination, the ALJ must evaluate the claimant's "statements about the effects of her symptoms . . . in light of the medical evidence and other evidence such as precipitating and aggravating factors, medications and treatment, and how the symptoms affect the applicant's daily living."  <u>Syms v. Astrue</u>, Civil No. 10-cv-499-JD, 2011 WL 2972122, at * 4 (D.N.H. July 21, 2011) (citing 20 C.F.R. § 404.1529(c)(3)).  Moreover, "[p]art of the ALJ's credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general 'believability.'"  <u>Guerin v. Astrue</u>, Civil No. 10-cv-421-SM, 2011 WL 2531195, at *6 (D.N.H. June 24, 2011).


    1.  Mental Impairment

Shaw asserts that her mental impairment results in marked limitations.  Most of the evidence she points to reflects her own self-reporting to medical providers regarding her symptoms and their effects, <u>see</u> Doc. No. 12, pgs. 5-8, and also includes her testimony at the hearing, where she stated that she has anxiety around people, nightmares, and PTSD from previous sexual abuse. Admin. Rec. 38-41.

In discussing Shaw's mental impairment at Step 2, the ALJ reviewed the evidence (including medical records and evidence of Shaw's daily activities), explained why he was according only "minimal weight" to the opinion of Shaw's treating psychologist, Dr. Meghan Estey, and ultimately found Shaw's allegations regarding the severity of her mental limitations to be "less than fully credible." Admin. Rec. 15. The ALJ relied on the opinion of Dr. Kathryn McNally, Psy.D., who met with Shaw and conducted an independent psychological evaluation in January 2009. Dr. McNally found that Shaw had no functional loss in daily activities, social interactions, work related tasks, and work related stress. Dr. McNally also noted that Shaw was vague and evasive regarding her symptoms and that her motivation for treatment was poor. Admin. Rec. 15. The ALJ also relied on the opinion of Shaw's examining physician, Dr. John Walter, M.D., who, although noting that she "could have Post Traumatic Stress Disorder based on her history," Admin. Rec. 592, "questioned whether she suffered from bipolar disorder." Admin. Rec. 15. In addition, Dr. Walter described Shaw as being in good control of her anxiety and depression. He noted that Shaw's mental impairments had been adequately treated since childhood with counseling and medication. Admin. Rec. 422.

13

The ALJ also credited the State Agency physician, Edward
Martin, Ph.D., who opined in March 2009 "that the claimant's
mental impairments were 'not severe,'" in part because there was
"insufficient evidence to support her allegation." Id. at 15.
The ALJ also relied on Shaw's own reports of daily activities,
noting that "by the claimant's own report she is able to
function." Id. at 15.  Although Shaw "becomes anxious
interacting with others and prefers to stay at home, she does
grocery shop, socialize, and drive; and she is able to manage her
finances." Id.  The ALJ also acknowledged Shaw's hospitalization
for suicide "attempt"[3] in July 2009 but noted that she was
"successfully treated" following that hospitalization.  Admin.
Rec. 15.

Lastly, the ALJ explained why he gave "minimal weight" to
the July 2009 opinion of Shaw's treating psychologist, Dr. Estey.
Dr. Estey opined that Shaw is unable to work because of mental
illness.  The ALJ found that Dr. Estey's opinion "appears to be
based solely upon the subjective complaints of the claimant whom
I find to be less than fully credible." Admin. Rec. 15.  He also

---

[3] Shaw' brief does not explicitly state that she is challenging
the ALJ's determination that her subjective complaints about
mental limitations are not wholly credible.  But because that
argument is implicit in Shaw's overarching argument about the
severity of her mental impairment, the court will address it.

14

found significant the fact that Dr. Estey had been treating Shaw
"a mere three months prior to her July 2009 opinion."  Id.

Shaw complains that the ALJ ignored evidence which supports
her claim of marked mental limitations.  Specifically, she notes
that the ALJ did not discuss a Global Assessment of Functioning
(GAF) score of 45 in 2010 and the April 2010 opinion of Dr.
Pamela Olsson, M.D., that Shaw is unable to work "at this time"
due to "depression and anxiety."  Admin. Rec. 495.  "A GAF score
of 45 indicates serious symptoms or impairment in social or
occupation functions."  Marcotte v. Callahan, 992 F. Supp. 485,
488 (D.N.H. 1997).  Although a GAF may be of "considerable help"
in determining a claimant's RFC, it is not "essential."  Howard
v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir.
2002).  Indeed, "[a] GAF score, standing alone, does not
necessarily indicate an inability to work or to perform specific
work-related functions."  LaFontaine v. Astrue, No. 1:10-cv-527-
JAW, 2011 WL 4459197, at *4 (D.Me. Sept. 25, 2011).  Here, the
ALJ was entitled to consider the GAF score of 45 in the context
of all of Shaw's medical records, some of which indicated GAF
scores of 50/55.  A GAF score above 50 indicates moderate
symptoms or limitations.  See Marcotte, 992 F. Supp. at 488, n.4.

With respect to Dr. Olsson's opinion that Shaw is unable to
work, the Commissioner correctly points out that Dr. Olsson's
letter expressing that opinion is unaccompanied by treatment
notes.[4]  See 20 CFR § 416.927 ("The better an explanation a
source provides for an opinion, the more weight we will give that
opinion.").  Without more, the ALJ was entitled to discount the
opinion - an opinion on a matter reserved for the Commissioner.
See Arroyo v. Secretary of Health & Human Services, 932 F.2d 82,
89 (1st Cir. 1991) ("The ALJ was not required to accept the
conclusions of claimant's treating physicians on the ultimate
issue of disability.").

In sum, although the record establishes that Shaw was
treated numerous times for a mental condition, there is
substantial evidence in the record to support the ALJ's
conclusion that her mental impairment has not resulted in marked
limitations.

---

4 The treatment notes from Dr. Olsson in the record consist of
one dated two months earlier (in which the doctor questioned
whether Shaw had bipolar disorder, stating that her symptoms were
"more consistent with depression and anxiety"), and one
describing Dr. Olsson's examination of Shaw in June 2009 during
her hospitalization for suicidal ideation.  See Admin. Rec. 642,
460.

2.   Physical Impairment

In assessing Shaw's residual functional capacity, the ALJ concluded that she retained the ability to perform the full range of light work, "allowing for performing the postural functions occasionally."  Admin. Rec. 16.  The ALJ found that Shaw's medically determinable impairment of degenerative disc disease could reasonably be expected to cause the symptoms she alleged. Id.  He further found, however, that Shaw's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment."  Id.  Shaw challenges this finding on the ground that the ALJ failed to properly assess the credibility of her subjective complaints of pain relating to problems in the cervical and lumbar regions of her spine.

In 2010, after having received non-surgical pain management treatment for several years, Shaw underwent two separate surgeries — a cervical decompression and fusion and a lumbar fusion.  She alleges that she continues to experience disabling pain despite the surgeries.  "In evaluating a claimant's subjective complaints of pain, the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant

17

limitations of function." Avery, 797 F.2d at 29. Here, the ALJ acknowledged Shaw's subjective complaints of pain and her allegation that "epidural steroid injections and neck and back surgeries" have not been "helpful." Admin. Rec. 16. The ALJ found that Shaw "does currently appear to have mild symptoms related to her back impairment." Id. He further found, however, that her statements about the intensity, persistence, and limiting effects of her pain were "not credible." Id. He noted that Shaw's activities of daily living do not support her allegation of disabling pain. Id. at 16-17.

The record also shows that, one year following Shaw's cervical decompression and fusion surgery, her doctor reported that Shaw was "reasonably doing well with the cervical spine . . . ." Admin. Rec. 654. Moreover, Shaw did not receive any treatment or therapy for her cervical spine in the year following the surgery. With respect to her lumbar surgery, Shaw was observed, one day after that operation, "sitting on a bed side chair, comfortably, and eating her dinner." Admin. Rec. 648. It was reported by her provider that "overall back pain is easier than prior to surgery, despite post-op surgical pain." She was able to ambulate well with a walker and was discharged. Id. An x-ray examination of her spine showed that the hardware was

18

intact and there were no complications or misalignments.   Admin.
Rec. 649.

At most, there is a conflict in the record as to whether
Shaw experiences disabling pain.   The ALJ was obligated to
resolve that evidentiary conflict, and did so in a manner that
finds substantial support in this record.   <u>Irlanda Ortiz</u>, 955
F.2d at 769.   The court finds, therefore, that the ALJ's
conclusion that Shaw's pain was not disabling, and his subsidiary
finding that her statements regarding her pain were not wholly
credible, are supported by substantial evidence.

### Conclusion

For the foregoing reasons, claimant's motion to reverse the
decision of the Commissioner (document no. <u>11</u>) is denied.   The
Commissioner's motion to affirm his decision (document no. <u>15</u>) is
granted.   The Clerk of Court shall enter judgment in accordance
with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

December 16, 2011

cc:   Christopher J. Seufert, Esq.
      Kelie C. Schneider, Esq.
      Gretchen L. Witt, AUSA

19